IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TAMMIE MORRIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01243-O-BP |
| § | |
| KILIO KIJAKAZI, § | |
| ACTING COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Tammie Morris ("Morris") applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Miller appeals. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings in which the ALJ complies with 20 C.F.R. § 404.1520(c) by explaining how she evaluated the persuasiveness of all medical opinions of record.

**I.     BACKGROUND**

Morris seeks disability benefits under Title II of the SSA, claiming disability since August 26, 2017. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 12-1 at 22. Morris's DIB application specified several medical conditions that limit her ability to work, including depression, chronic pain, and carpal tunnel syndrome. Tr. 25. The Commissioner denied her application initially and upon reconsideration. Tr. 22.

Morris challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") who conducted a telephonic hearing and later affirmed the Commissioner's denial. Tr. 31-32, 52. After the Social Security Appeals Council denied Miller further administrative review (*id.* at 13), she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She claims she is disabled and thus entitled to DIB. ECF No. 1.

## II.   STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1),

while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh

evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 22-32. First, the ALJ found Morris has not engaged in substantial gainful activity since August 26, 2017. Tr. 25. Second, she found four medically determinable impairments: spinal disorder, carpal tunnel syndrome, depression, and obesity. *Id*. The ALJ found both depression and obesity to be nonsevere. *Id*. Third, she identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 26. She then assessed Morris's RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work except stand/walk two hours during the work day, never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch or crawl; frequently handle bilaterally; avoid concentrated exposure to unprotected heights and moving mechanical parts and should not work on uneven terrain/flooring.

*Id.* at 27. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Morris could perform PRW, specifically as a telephone solicitor or collections or order clerk. *Id.* at 31. The step-four finding meant Miller was ineligible for DIB because she was not disabled. *Id.* at 31; *see Lovelace*, 813 F.2d at 58. After finding that Miller's age, education, work experience, and RFC with additional limitations still allowed her to perform the requirements of other jobs, the ALJ then found Miller "not disabled" under Medical-Vocational Rule 201.20 and Rule 201.11. Tr. 31.

Miller urges reversal because: (A) the ALJ did not properly articulate the persuasiveness of the medical opinions in the record; (B) the VE testimony was unsubstantiated; (C) the ALJ improperly analyzed Morris's transferable skills at Step 5; and (D) the ALJ erred in her SSR 16-3P analysis regarding the credibility of claimant's subjective complaints. ECF No. 15 at 6-24.

### A. The ALJ properly considered the persuasiveness of Dr. Huffman's medical opinion but erred in not articulating how persuasive she found Dr. Miranzadeh's medical opinion.

An ALJ has broad discretion to resolve conflicts in the evidence without being second-guessed by a court. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *See generally Harris* v. *Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Qualls* v. *Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). An ALJ may even completely disregard the opinion of a treating physician. *See Brown* v. *Apfel*, 192 F.3d 492, 500 (5th Cir. 1999).

Regardless of whether an ALJ accepts or rejects a medical opinion, the ALJ must "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions ... in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). While ALJs need not exhaustively recount their reasoning, they must "explain how [they] considered the supportability and consistency factors for ... medical opinions ... in [a claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2); *Guy*, 2020 WL 1008039, at *3. This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Morris applied for DIB on November 10, 2021, and is, therefore, entitled to the explanation.

Morris claims that the ALJ failed to comment on the persuasiveness of the medical opinions of (1) Dr. Huffman, (2) Dr. Tolley, and (3) Dr. Miranzadeh. The medical opinion of Dr. Tolley is not relevant in this situation as it was used merely to determine if Morris had severe depression and not to gauge her disability status.

### i.   The ALJ properly articulated that Dr. Huffman's opinion was unpersuasive.

Dr. Huffman was Morris's treating physician, but his opinions are not the last word on Morris's disability status. The opinions of treating physicians are not conclusive. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Greenspan*, 38 F.3d at 237). And the law permitted the ALJ to discount his testimony for good cause. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 455-56). Morris claims that the ALJ did not show good cause to disregard Dr. Huffman's opinion and did not discuss in any detail why she found all the examining opinions, including Dr. Huffman's, unpersuasive. ECF No. 15 at 23. Morris then alleges that "the ALJ's failure to explain why she found Dr. Huffman's opinions to be less than persuasive affects Ms. Morris's 'substantive rights.'" *Id*.

The law is clear that ALJs must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." *Guy*, 2022 WL 1008039, at *3. Mere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced by the plain meaning of the regulatory text. *Id*. Determining supportability and consistency involve different analyses and "require the ALJ to explain [her] reasoning for [her] persuasiveness finding with respect to each factor." *Heleodoro C*., *Plaintiff*, *v*. *Commissioner*,

6

*Social Security Administration*, *Defendant*, No. 3:20-CV-3520-E-BK, 2022 WL 4259148, at *3 (N.D. Tex. July 20, 2022), *rec. adopted* 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022) (quoting *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence she provides to support that opinion, "consistency" is "an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id*; *See* 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2).

In her decision, the ALJ explained why she found Dr. Huffman's testimony to be unpersuasive, as follows:

> The opinion from the claimant's primary physician, Dr. Huffman is wholly unpersuasive. He cites findings that are not reflected in his own treatment notes, such as leg weakness, when exams show normal strength. There is no support for the upper extremity limitations based on his exams that show good strength and normal sensation. He also notes cane use despite not mentioning this in any of his treatment notes. He also states the claimant has limited education and may have difficulty learning new tasks. However, at the consultative exam, the claimant performed normally in cognitive functioning, she worked for years in a semi-skilled job and graduated from high school. There is no support for this opinion. It is not based on objective evidence.

Tr. 30. The ALJ's explanation meets the supportability and consistency requirements. Dr. Huffman's final opinion is contrary to his own observation notes, the State Agency Medical Consultant's observation notes, Morris's testimony, and the ALJ's perception of Morris. The ALJ carefully explained why she did not find Dr. Huffman's opinion persuasive, and the record she noted supports that conclusion. This point does not require reversal.

      **ii.  The ALJ erred by not stating why she found Dr. Miranzadeh's medical opinion unpersuasive, and the error was not harmless.**

Unlike her evaluation of Dr. Huffman's opinions, the ALJ did not analyze the opinions of Dr. Florian Miranzadeh, who evaluated Morris and provided an Evaluation and Narrative Response to the United States Department of Labor on March 30, 2017 ("Response"). Tr. 28, 621-

7

23. An ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability. *Knapp v. Saul*, No. 7:19-CV-00069-O-BP, 2020 WL 3516130, at *5 (N.D. Tex. June 12, 2020), *rec. adopted* 2020 WL 3510732 (N.D. Tex. June 29, 2020) (citing *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941-42 (N.D. Tex. 2015)).

Although the ALJ mentioned Dr. Miranzadeh's Response in passing in her decision, *see* Tr. 28, she did not state whether she considered Dr. Miranzadeh's opinion or if she found it to be supportable and consistent in light of the other medical opinion evidence of record. Morris asserts that the ALJ should have addressed Dr. Miranzadeh's opinions because of their relevance to her complaints and the proximity of the Response to the date of Morris's onset of disability. The Commissioner argues that the ALJ was not required to explain the persuasiveness of Dr. Miranzadeh's medical opinion in this situation because it predated the onset date of Morris's disability.

As noted above, an ALJ is required to consider *all medical opinions* in the record. The regulations do not provide any exception to that requirement for relevant opinions that pre-date a claimant's onset date. *Knapp*, 2020 WL 3516130 at *5; 20 C.F.R. § 404.1520c. The Response was relevant to the ALJ's disability determination because it addressed lumbosacral neuritis that caused pain in Morris's back and limited her ability to work. Tr. 621. The Response also addressed objective findings that caused Morris's symptoms, her prognosis, whether she could return to work either full-time or part-time, and the contents of her treatment plan. *Id.* Accordingly, because Dr. Miranzadeh's opinions regarding Morris's low back pain and limitations were in the case record and were relevant to the disability decision, it was error for the ALJ not to discuss them and explain whether she found them persuasive or not.

8

Nevertheless, the harmless error doctrine provides that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To prevail on this point, Morris must show the ALJ's failure to explain her consideration of Dr. Miranzadeh's opinions prejudiced her. In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Davidson*, 164 F. Supp. 3d at 944.

The ALJ's decision shows that she recognized Dr. Miranzadeh's medical opinion because she mentioned it. Tr. 28. The ALJ also noted the limitations present in an electromyogram/nerve conduction study ordered by Dr. Miranzadeh in May 2016. Tr. 28, 624-27. The Court concludes from this evidence that the ALJ considered Dr. Miranzadeh's opinion, but there is no indication what the ALJ thought of it. "[E]ven if the Court can intuit the ALJ's reasons for discrediting [Dr. Miranzadeh's opinions], it must remand the case so the ALJ can make explicit that which is currently implicit in [her] findings." *Guy*, 2022 WL 1008039, at *4 (citing *Amie R. S. v. Saul*, No. 3:18-cv-2557-B-BH, 2020 WL 1279210, at *10 (N.D. Tex. Feb. 29, 2020)). The mere fact the ALJ considered Dr. Miranzadeh's opinion is not enough because "[u]nless the ALJ explains why [she] rejected Dr. [Miranzadeh's] medical opinion[s], the Court can never determine whether [she] applied correct legal standards and reached a decision substantial evidence supports." *Guy*, 2022 WL 1008039, at *5; *See Shedrick M. v. Kijakazi*, No. 3:20-CV-03056-M-BT, 2022 WL 4134786, at *3 (N.D. Tex. Aug. 18, 2022), *rec. adopted* 2022 WL 4133308 (N.D. Tex. Sept. 12, 2022). Therefore, because the Court cannot meaningfully review the ALJ's decision without knowing why she rejected of Dr. Miranzadeh's medical opinions, this case should be remanded for the ALJ to provide the explanation the law requires.

### B. There was no reversable error in the ALJ's reliance on the VE's testimony.

An ALJ may properly rely upon testimony and conclusions of a VE. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *see generally Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986). However, an ALJ's reliance on the VE is not unlimited and is judicially restrained in certain circumstances.

#### i. The ALJ's not asking the VE about the consistency between her report and the DOT is a harmless error.

If the VE relies on the DOT to supply occupational information, the ALJ has an "affirmative responsibility to ask about any possible conflict between the expert's evidence and the DOT before relying on the VE's evidence to support a determination of not disabled." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). During Morris's hearing, the VE cited the DOT in her testimony, but the ALJ did not ask whether her testimony was consistent with the DOT. Tr. 85-87. Not asking the vocation expert about the consistency of her testimony was error.

However, a "[c]ourt will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey*, 230 F.3d at 142. The ALJ's error did not prejudice Morris. Although VEs and the ALJ may use multiple sources in determining whether a claimant may perform a job existing in the national economy, VEs primarily rely upon the DOT as their primary source. *See* SSR 00-4p, 2000 WL 1898704, at *4. The VE's testimony generally should be consistent with the information contained in the DOT. *Id*. Additionally, even if an inconsistency did exist in this case, Morris has not identified any actual conflicts between the VE's testimony and the DOT. Thus, Morris has not demonstrated any prejudice, and the ALJ's procedural error was harmless and does not warrant reversal.

### ii. The VE's testimony constitutes substantial evidence of job data.

The ALJ may rely upon a VE's testimony regarding job data. 20 CFR § 404.1566(e). The ALJ also may take administrative notice of the DOT to find evidence of job data. *Id*. §§ 202.1560(b)(2), 404.1566(d)(1), 416.960(b)(2); *Dunson v. Berryhill*, 2018 WL 1427107, at *7 (N.D. Tex. Mar. 22, 2018). Here, the ALJ relied solely on the VE's testimony to determine how many jobs were available for Morris in the national economy. Tr. 31. The VE's testimony was based off the DOT. *Id*. Morris argues the ALJ's sole reliance on the VE was not enough to constitute substantial evidence for her finding regarding the number of jobs available because the expert did not supplement her testimony with any additional explanations regarding how she calculated the job numbers. ECF No. 15 at 12-14.

Whether the VE had an adequate basis for her testimony is a moot point. Morris was represented at the hearing by an attorney, who was given the opportunity to question the VE regarding the validity of the job numbers. Tr. 88. If Morris questioned the basis of the VE's job numbers, her attorney should have raised the issue at the hearing. *See Dell v. Saul*, 807 F. App'x 385, 386 (5th Cir. 2020). Without such an objection, the ALJ was within her discretion to rely solely on the uncontested VE testimony. *Id*. (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (holding that absent objection at the hearing, a VE's testimony may qualify as substantial evidence even when unaccompanied by supporting data). Therefore, because Morris did not object at the hearing to the basis of the VE's testimony, the ALJ properly relied on the testimony of the VE. Because the VE's testimony provided substantial jobs in the national economy, this ground does not require reversal.

### C. The ALJ properly analyzed Morris's transferable skills at Step 5.

Unlike the first four steps, the Commissioner has the burden at fifth step to show the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ must show that the claimant possesses skills from a previous work experience than can be transferred to a new job in the national economy. *Audler*, 501 F.3d at 448. However, "[o]nce the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453.

Transferability applies only to situations "when the skilled or semi-skilled work activities [claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); *see* SSR 82-41, 1982 WL 31389 at *7 (Jan. 1, 1982). Transferability is most probable for jobs requiring the same or a lesser degree of skill, or jobs that use similar tools, machines, materials, and processes. 20 C.F.R. § 404.1568(d)(2). Exact or complete similarity between jobs, however, is not required for a finding of transferability. *See Id.* § 404.1568(d)(3).

To determine whether the skills a claimant gained in previous work are transferable, the ALJ often will rely upon a VE to testify whether the claimant can perform other substantial work in the national economy. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields*, 805 F.2d at 1170 ). VEs are familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. *Id.* The VE then can compare all the unique requirements of a specified job with the particular ailments a claimant suffers to reach a reasoned conclusion regarding the transferability of skills. *Fields*, 805 F.2d at 1170. After the VE

identifies the skills a claimant acquired through past relevant work, the ALJ then determines if those skills are transferable to other occupations. 20 C.F.R. § 404.1568(d).

During the hearing here, the VE testified that Morris had transferable skills of (1) math skills, to calculate prices and costs of shipping items; (2) introducing others to fill or offer additional products or explain features; and (3) analyzing information to respond to complaints. Tr. 85-86. The ALJ based this determination on Morris's testimony concerning what her previous job entailed and the manifestation of her medical conditions. *Id*. The VE testified that these skills would be easily transferable to a new job as a telephone solicitor or collections or order clerk, as Morris could apply her previous skills to these new jobs. *Id*.

Morris argues that substantial evidence does not support the ALJ's adoption of these skills as transferable and that the ALJ ignored contrary evidence. ECF No. 15 at 14-18. In support, Morris references Dr. Tolley's opinion that Morris had poor recall and could not handle her own finances. *Id.* at 15. Next, Morris claims that there is no testimony in the record that she possessed the skills needed for the new jobs proposed by the VE—such as scheduling skills, clerical skills, analytical skills, etc.—and that the skills she did possess from being a post office clerk were vastly different. *Id.* at 16.

However, there is evidence in the record to support the ALJ's conclusion. Although Dr. Tolley concluded Morris could not handle her own finances, Morris regularly paid her own bills and handled her checking account. Tr. 306, 319. Additionally, the written job description of Morris's post office job is extensive and includes clerical skills. Tr. 67, 255. The ALJ, not the Court, must resolve credibility issues in the record and determine which pieces of evidence are more persuasive. *Hollis*, 837 F.2d at 1383. The record contains substantial evidence to support the ALJ's finding that the skills, as identified by the VE, that Morris acquired as a post office clerk

are transferrable to the jobs of telephone solicitor, order clerk, and procurement clerk. The ALJ's decision is conclusive on this point and should be affirmed.

### D. Substantial evidence supports the ALJ's evaluation of Morris's subjective complaints.

At step four, the ALJ considers the claimant's RFC, which involves assessing the claimant's description of her symptoms. An ALJ must conduct an objective-subjective, two-step analysis to make this assessment. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curium); SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). The first step requires the ALJ to objectively determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Salgado*, 271 F. App'x at 458-59. To satisfy the first step of the two-part test, the ALJ here determined that Morris's medically determinable impairments of depression, chronic pain, and carpal tunnel syndrome could reasonably be expected to cause the alleged symptoms. Tr. 27. Having identified an impairment at step one, the ALJ then proceeded to the second, subjective step. *Salgado*, 271 F. App'x at 458-59. She "consider[ed] [both] the applicant's statements about [her] symptoms and the remaining evidence in the record to determine the strength of symptoms and how the symptoms affect the applicant's ability to do basic work." *Id*. This step requires a credibility finding regarding the applicant's claims about her symptoms. *Id*.

The ALJ's "evaluation of the *credibility* of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). An ALJ employs a seven-factor analysis to assess the credibility of a claimant's subjective complaints. These factors include:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than

medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Hobbs v. Astrue*, 2009 WL 2700222, at *4-5 (N.D. Tex. Aug. 27, 2009) (citing 20 C.F.R. § 404.1529(c)(3)); *see* SSR 16-3p, 2017 WL 5180304, at *7-8. Although the ALJ must explain the reasons for her credibility determination, neither the regulation nor case law requires an ALJ to discuss each factor in outline or other rigid, mechanical form. *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001). It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered. *Id*. While the ALJ in this case did not discuss the factors in order or in a structured form, the ALJ's evaluation of Morris's subjective complaints is sufficiently specific to confirm that she considered the regulatory factors.

First, the ALJ noted Morris's daily activities of preparing meals, doing laundry, visiting relatives, taking walks, and watching television. Tr. 26. Second, the ALJ considered the claimant's numbness in both her wrists, her diminished range of motion in her back and legs, and the irritation she feels when she stands or sits too long. Tr. 27. The ALJ also noted that Morris talks about how her hands are cold and the pain persists. *Id*. Third, the ALJ noted that sitting or standing for a long period of time irritates Morris's back and leg pain. *Id*. The ALJ also recognized that Morris showed positive Tinel's sign on her right hand, which could also be an aggravating factor. Tr. 28. Fourth, the ALJ noted that Morris touch medication and steroid injections to help with the pain, but had not taken any medication for the weeks leading up to the hearing. *Id*. Additionally, nowhere in the record did Morris allege any side effects to the medications prescribed to her. *See generally* Tr. 50-88. Fifth, the ALJ discussed Morris's visits to doctors and her refusal to follow up on their referrals and recommendations to help relieve the pain. Tr. 28. Sixth, the ALJ noted Morris used a cane to walk. Tr. 29. Finally, the ALJ noted Morris could only lift and carry twenty pounds

occasionally and ten pounds frequently, stand and walk two hours after an eight-hour day, and had limitations on postural activities, frequent handling, and hazard exposure. *Id.*

The ALJ properly employed the seven-factor analysis to evaluate Morris's subjective complaints. Substantial evidence supports the ALJ's credibility determination, and the Court should defer to the ALJ on this point. Reversal therefore is not required on this ground.

## IV.   CONCLUSION

Because the ALJ did not properly explain the persuasiveness of Dr. Miranzadeh's medical opinions and because this error was harmful, the Court should **REVERSE** and **REMAND** the ALJ's decision on this point. Because the ALJ relied upon proper legal standards as to evaluation of the persuasiveness of Dr. Huffman's opinions, reliance on the VE's opinion, evaluation of transferable skills at step five, and consideration of subjective complaints, and because substantial evidence supports the ALJ's conclusions, the Court should **AFFIRM** the ALJ's decision on these points.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on September 29, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

17